IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| LA FAMIGLIA TRUST, by and through HENRY R. DATELLE in his capacity as sole Trustee, | : : : : | |
| Plaintiff, | : : | CIVIL ACTION NO. 1:10-CV-1438-AT |
| v. | : : | |
| MICHAEL O'CONNOR; and ANGELA O'CONNOR, | : : : | |
| Defendants, | : : | |
| v. | : : | |
| ANDURO HOLDINGS, L.L.C.; HENRY DATELLE[1], | : : : | |
| Third-Party Defendants. | : | |

**O R D E R**

This matter is before the Court on the Third-Party Defendant Anduro Holdings, L.L.C.'s ("Anduro") Motion to Dismiss, [Doc. 45], the Third-Party Complaint that Defendants Michael and Angela O'Connor have brought, [Doc.

---

[1] The parties have referred to Mr. Datelle as a Counter-Defendant, *see e.g.*, Doc. 41, and sometimes as a Counter-Counter Defendant, *see e.g.*, Doc. 52. Defendants sought to join Mr. Datelle to this suit in his individual capacity at the same time they sought to join Anduro Holdings, L.L.C. *See* Doc. 21. The Court approved joining Mr. Datelle in his individual capacity because Defendants' claims against Mr. Datelle arose from the same series of transactions involved in Defendants' original counterclaim against the Trust. *See* Doc. 40 at 4. Because of this, Mr. Datelle is more properly identified as a third-party defendant than a counter-defendant here. *See generally Black's Law Dictionary* 1618 (9th ed. 2009) (defining third-party defendant as "[a] party brought into a lawsuit by the original defendant"). Thus, the Court will identify Mr. Datelle in his individual capacity as a Third-Party Defendant from this point forward.

17]. Facing an array of investment fraud, tort, and securities claims that Plaintiff La Famiglia Trust ("the Trust") filed, the O'Connors sued Anduro seeking indemnification for any claims on which Plaintiff succeeds. [Doc. 17]. Anduro denies that the O'Connors have properly stated a claim for indemnification for any claims Plaintiff has brought and moves for dismissal of their third-party claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.   STANDARD FOR MOTION TO DISMISS

Anduro's Motion to Dismiss rests on the contention that the O'Connors have not pled facts to support a claim for indemnification upon which relief can be granted. This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1216 (3d ed. 2002); *see also Ashcroft v. Iqbal*, 556 U.S.___, 129 S.Ct. 1937, 1949 (2009). In considering a Rule 12(b)(6) motion, the court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitlement' to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 555 (2007).  In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).

The factual statements the Court provides in this Order do not represent actual findings of fact.  Instead, the Court provides the statements simply to place its legal analysis in the context of the allegations asserted in this matter in the light most favorable to the nonmoving party.  *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007).  The O'Connors' claims for potential indemnification initially rise or fall on whether the claims the Plaintiff Trust filed arguably relate to actions the O'Connors took in their capacities as members of Anduro's board of directors. For this reason, the Court examines both the O'Connors' Third-Party Complaint, Doc. 17, and the Plaintiff's Amended Complaint, Doc. 15, to determine the scope of claims for which the O'Connors seek indemnification in the event the Plaintiff Trust prevails in obtaining a judgment against them.

## II. BACKGROUND

### A. Procedural Background

On January 15, 2010, Plaintiff sued Defendants in state court alleging conversion, fraud, negligent misrepresentation, unjust enrichment, and civil conspiracy.  Defendants removed the case to this Court on May 12, 2010.  On August 23, 2010, Defendants filed a third-party complaint against Anduro for any

claims against the O'Connors the Trust succeeds on, alleging that Defendants had made the actions and representations at issue here on behalf of Anduro and in their capacities as Anduro board directors and officers. Doc. 17 ¶¶3, 4, 9, 10, 11. Anduro now asks the Court to dismiss Defendants' Third-Party Complaint.[2]

### B. Facts

Beginning in 2008, Defendants Michael and Angela O'Connor founded, owned, and operated a company called MaxPak Manufacturing, S.A. ("MaxPak") in Honduras. Doc. 15 ¶12; Doc. 41 ¶11. MaxPak makes woven bags for seed, dry animal food, and other products. By early 2009, MaxPak was not making enough money to meet its operating costs. Doc. 15 ¶16. In pursuit of additional financing, Defendants obtained a $200,000 loan from Maxam, USA, L.L.C. ("Maxam USA") in exchange for Maxam USA receiving a ten percent ownership interest in MaxPak. *Id.* at ¶17.

Plaintiff Trust's sole trustee, Henry Datelle, was a member of Maxam USA. In early 2009, Defendants and Mr. Datelle began negotiating a proposal for the Trust to extend MaxPak a $1,000,000 line of credit and to buy an interest in the company. *Id.* at ¶¶21-22. Defendants and Mr. Datelle also started negotiating a plan for Defendants to deposit MaxPak's stock into a holdings company for which Defendants and Mr. Datelle (among others) would serve as members of the board

---

[2] A detailed summary of the initial web of filings in this case is set forth in the Order of December 22, 2010 issued by the Honorable Charles A. Pannell, the predecessor judge handling this case (Doc. 40) and in this Court's Order of September 30, 2011 denying the Counter-Defendants' motion to dismiss (Doc. 58).

4

of directors. In March 2009, the Trust and Defendants signed a letter of intent memorializing the parties' intent to negotiate a comprehensive agreement providing for the formation of a new holdings company to manage the business and assets of Maxpak. *Id.* at ¶¶21-23.

Under the letter of intent, the Trust started loaning money to MaxPak and paying off some of MaxPak's debts. *Id.* at ¶24. Defendants repeatedly advised Mr. Datelle that MaxPack would go under if the Trust did not continue lending MaxPak increasing amounts of money. *Id.* at ¶34. For example, the O'Connors told the Trust's representatives that they had secured a highly remunerative three-year contract for bags that Maxpak would manufacture but that Defendants required additional funds to purchase the raw materials needed to fulfill the contract. *Id.* at ¶31. Based on these representations, the Trust lent and continued to lend MaxPak money—exceeding the amounts the parties had previously agreed on in the letter of intent. *Id.* at ¶¶32-34.

Based on certain representations from Defendants, the Trust entered into an Investment Agreement with Defendants on July 1, 2009, to deposit MaxPak's stock into a holdings company that would be called Anduro Holdings, L.L.C. *Id.* at ¶38. Defendants owned 51% of Anduro's stock. *Id.* at ¶39. Plaintiff held another 39%. *Id.* Maxam USA owned the other 10%. Doc. 41 ¶19. Defendants and Mr. Datelle served on Anduro's board of directors. Doc. 15 ¶23. Mr. O'Connor became the CEO of Anduro and remained primarily responsible for

MaxPak's day-to-day operations. Doc. 15 ¶38. Mr. Datelle became the chairperson of Anduro's board of directors. Doc. 41 ¶19.

In the process of entering into the Investment Agreement, the O'Connors made multiple representations and warranties to the Trust. They represented that MaxPak did not have any litigation pending against it that would threaten its ability to conduct business. *Id.* at ¶43. They warranted that MaxPak did not have any claims against it posing expected losses of more than $25,000. *Id.* They warranted that they had substantially complied with all of their outstanding obligations and had no material contractual defaults. *Id.* at ¶¶44-45. They warranted that they did not owe any party $1,000 or more. *Id.* at ¶45. The O'Connors furthermore agreed that these warranties would survive for a year after the parties entered the July 1, 2009, Investment Agreement. *Id.* at ¶47.

According to the Trust, Defendants made these warranties knowing that they were not true. At the time Defendants entered into the Investment Agreement, Defendants had defaulted on a $778,000 settlement agreement with an outside company. *Id.* at ¶65. Defendants also owed nearly $50,000 to a raw material supplier. *Id.* at ¶66.

According to the Trust, the Defendants also made false representations about MaxPak's operations, financial stability, product quality and market demand, and viability during the months prior to and at the point of the parties' entry into the July 1, 2009, Investment Agreement. *Id.* at ¶¶49-50, 64. Defendants misrepresented the existence, nature, and status of some contracts.

*Id.* at ¶¶50-51.  During the Trust's due diligence investigation into MaxPak, according to the Trust, Defendants falsified MaxPak's records to make the company look more financially stable.  *Id.* at ¶¶52-56.  Defendants also hid scrap materials and inferior product when Plaintiff inspected MaxPak's manufacturing facility.  *Id.* at ¶¶58-59.

The Trust claims that the O'Connors designed all of the above alleged misrepresentations and false warranties to induce and facilitate the Trust's entry into the Investment Agreement of July 1, 2009, that created Anduro Holdings, L.L.C.  Doc. 15 ¶¶49-60, 64-69, 93-108, 120-131.  However, the Plaintiff's complaint also alleges that Defendants took certain tortious actions in the course of their management and oversight of Anduro's affairs after July 1, 2009, or at the very least, at an unspecified time.  These alleged actions included:

(1) Angela O'Connor made misrepresentations in November 2009 about a contract with a client named Shawnee Milling that did not exist and engaged in multiple efforts to process an order for Shawnee Milling.  Doc. 15 ¶¶61-63. Defendants furthermore attempted to manufacture product for Shawnee Milling which they knew had not been ordered, in direct violation of the company's policies, thereby causing substantial financial losses and damages.  Doc. 15 ¶¶116-118.

(2) Defendants at an unspecified time made misrepresentations about a contract with a client named Pennington to manufacture bags and purchased raw materials in connection with this non-existent contract.  These raw materials

were not appropriate for MaxPak's manufacturing process or were in quantities exceeding customer needs.  Doc. 15 ¶¶85-86.

(3)  The O'Connors converted advances, salaries, expense reimbursements, and "the continued benefits of ownership of the Company and/or the Holding Company" for their own personal use.  Doc. 15 ¶¶84, 110.

(4)  Mr. O'Connor as CEO failed to competently manage the day-to-day operations of the company without excessive waste and accordingly, unjustly retained benefits and compensation.  Doc. 15 ¶¶ 110-113.

## III.  DISCUSSION

Georgia Code Annotated § 14-2-851(a) allows a corporation to indemnify a director against liability where the director acted in good faith and the director reasonably believed that he acted in his official capacity in the best interests of the corporation or alternatively, that his actions were not opposed to the best interests of the corporation.[3]  A court can also order a corporation to indemnify a

---

[3]  Georgia Code Annotated § 14-2-851 provides:
(a) Except as otherwise provided in this Code section, a corporation may indemnify an individual who is a party to a proceeding because he or she is or was a director against liability incurred in the proceeding if:
  (1)  Such individual conducted himself or herself in good faith; and
  (2)  Such individual reasonably believed:
    (A) In the case of conduct in his or her official capacity, that such conduct was in the best interests of the corporation;
    (B) In all other cases, that such conduct was at least not opposed to the best interests of the corporation; and
    (C) In the case of any criminal proceeding, that the individual had no reasonable cause to believe such conduct was unlawful.

director who has *not* met the relevant standard of conduct in § 14-2-851 if the court determines "in view of all the relevant circumstances, that it is fair and reasonable to indemnify the director." O.C.G.A. § 14-2-854(a)(2). Thus, even where a director may not have acted in good faith or in the company's best interests, a court may order indemnification of reasonable expenses in connection with the proceeding if the court finds the indemnification fair and reasonable. *Id.*

As noted above, the core of Plaintiff's allegations against Defendants relate to actions the O'Connors took before the parties created Anduro Holdings, L.L.C. on July 1, 2009. Accordingly, Anduro cannot be legally required to indemnify the Defendants for actions taken or representations made before the company even came into existence or before Defendants actually served on Anduro's board of directors. *See generally* O.C.G.A. § 14-2-850(2) (defining "director" and "officer" as either an individual serving as a corporation's director or officer or an individual serving in an enumerated capacity of another entity "at the corporation's request"). For the foregoing reasons, the Court **DISMISSES** Defendants' claims for indemnification to the extent that they relate to the O'Connors' actions and representations that occurred prior to or at the point of execution of the Investment Agreement of July 1, 2o09.

On the other hand, Plaintiff has claimed, or at least one can reasonably infer, that some of Defendants' alleged misdeeds occurred on or after the organization of Anduro on July 1, 2009. The O'Connors' Third-Party Complaint

does not explicitly allege that they acted in good faith or alternatively, in a manner not opposed to Anduro's best interests.  However, the O'Connors expressly deny all liability relating to the claims asserted by Plaintiff, Doc. 17 ¶11, and thereby effectively deny that that they took any of the actions that Plaintiff alleges were adverse to Anduro's interests.

Evidence the parties introduce at a later stage of these proceedings may establish, as Plaintiff's complaint alleges, that the O'Connors engaged in bad faith and self-dealing and abused their discretion in their capacities as directors and officers of Anduro. Such evidence would clearly render Defendants' claims for indemnification untenable under the standards of Georgia Code Annotated §14-2-851 or §14-2-854.  Absent such proof, Georgia's business judgment rule presumes that board directors take management actions on an informed, good faith basis and insulates directors from liability unless the evidence shows that they engaged in fraud, bad faith, or an abuse of discretion. *See In re Munford, Inc.*, 98 F.3d 604, 610-611 (11th Cir. 1996) (affirming summary judgment for directors and officers who "consulted legal and financial experts throughout the solicitation and negotiation for a purchaser" for the company); *Stepak v. Addison*, 20 F.3d 398, 403 (11th Cir. 1994) (reversing dismissal in shareholder derivative suit of claim that board of directors improperly refused to investigate alleged breach of fiduciary duty); *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 574-75  (11th Cir. 1988) (affirming summary judgment for defendants, and

observing that business judgment rule protects directors who have made informed decisions and acted deliberately).

The allegations of Plaintiff's complaint at this point are no more than allegations and cannot alone, without the presentation of evidence, preclude as a matter of law the Defendants' claims for indemnification based on actions they took in their capacity as Anduro board directors or officers after the execution of the Agreement on July 1, 2009.  Anduro may at a later stage in these proceedings be able to defeat the Defendants' indemnification claim for actions taken post execution of the Agreement through persuasive evidence of fraud, bad faith, and abuse of discretion, but that is for another day.

## IV. SUMMARY

The Court **GRANTS IN PART** and **DENIES IN PART** Third-Party Defendant Anduro's Motion to Dismiss Defendants' Third-Party Complaint. [Doc. 45].  The Court **DISMISSES** Defendants' claims against Anduro for indemnification arising out of Defendants' representations and actions occurring before or simultaneous to the execution of the Agreement on July 1, 2009.  The Court **DENIES** Anduro's Motion to Dismiss with respect to Defendants' claims for indemnification arising out of Defendants' representations and actions occurring after execution of the Agreement on July 1, 2009.

It is so ORDERED this 30th day of September, 2011.

_____
Amy Totenberg
United States District Judge